4-0-8-0-6-0-6. Council, please. Keep your voice up a little, please. Yes, Your Honor. Some of us are a lot older than you are. I apologize. You're just me. You've got to be young. Your Honor, this is a case where the Commission found for the claimant a case of permanent total disability. The issues we've raised on appeal, causation, nature, extent of disability, medical, I think the arguments all really converge on nature and extent of disability. The main issue being whether or not the claimant presented credible evidence of permanent total disability in this case. Obviously, the employer is well aware of his burden today. They have persuaded the evidence in this case. But we believe that based off the credible evidence in this case, the employee did not meet her burden. There are three diagnoses of the claimant's various conditions in this case. RSD, which is referable to right knee condition, as well as carpal tunnel, and a certain amount of mental health injury in this case. There was no dispute on accident or causation with respect to the right knee injury. Dr. Gertler performed a medial meniscectomy in May of 2003. In July of that same year, Dr. Gertler noted signs and symptoms that he felt were compatible with RSD. Dr. Gertler refers the claimant to Dr. Sigler in October of 2003 for her treatment and recommendations regarding the RSD condition. With respect to the following issues of causation, MMI, return to work capabilities, it's important to note that Dr. Gertler refers to Dr. Sigler in that regard. In November of 2003, Dr. Sigler releases the claimant to sedentary work. She at that time is under a significant amount of medications, and the record reveals those medications were rotating casts. They were changed over time in an attempt to treat the RSD, and as the court is obviously well aware, it's not the most easy condition to diagnose or treat. The objective evidence is hard to find, and I believe Dr. Kev is the contradiction between Dr. Cantrell's opinion and the opinions of the other examining physicians in this case. The claimant did attempt to go back to work in November of 2003 under the sedentary release of Dr. Sigler. The claimant's presentation to work involved shaking, crying. Admittedly, it was impossible for her to do the work at that time. The employer made the decision at that point that based upon that attempt at work, they couldn't take her back in that condition. The employer submits in this case that the only evidence that would support this condition at that time was related to the work accident. It was based on the medications that the petitioner was on. The petitioner's had a number, excuse me, the employee's had a number of medications rotated through her treatment, and we believe that supports our contention that the diagnosis of RSD in this case was not a permanent condition. Dr. Sigler ultimately recommends the petitioner undergo an FCE. The final findings of the FCE examiners indicate the petitioner is capable of life-duty work. Obviously, that's to a certain degree more physical work than the original sedentary release. An MRI in February 2004 notes that Dr. Gertler's reading was that the petitioner's writing was structurally sound. At that point in this case, the only treatment the petitioner was continuing to undergo was for the RSD. In that same time period, the diagnosis of bilateral carpal tunnel syndrome was made as well. The claimant underwent bilateral carpal tunnel releases with Dr. Sebesky. The employer contends that Dr. Sebesky's causation opinion is flawed at best. Dr. Sebesky's records and testimony reveal that he admits that the onset of bilateral carpal tunnel syndrome could have been idiopathic. He said there are other factors that are possible in the development of carpal tunnel syndrome. He causally relates that condition to the employment based on physical therapy the petitioner is undergoing. But the testimony reveals nothing, virtually nothing at all about the… What doctor gave a contrary causation opinion on carpal tunnel? There was not one. So Sebesky was the only one to render an opinion, is that right? That's true. There's also the mental health component of this claim as well. Petitioner employee treated with Dr. McGorgan. Dr. McGorgan noted many difficulties in the treatment of the claimant in this case. He noted with implementing the MMPI test that she was defensive, avoided answering certain questions. He also used this biofeedback machine which is discussed in the briefs. That purportedly was used to provide an objective basis for his diagnosis and treatment in this case. I believe that his testimony clearly demonstrates that his medical opinions in this case are not credible whatsoever. With the biofeedback machine he notes readings that are beyond the capabilities of measurement where 100 is the top possible reading for a problem with the sympathetic nervous system. He's documenting reports at 200. The important thing with respect to Dr. McGorgan's testimony is that he's unable to testify and doesn't provide testimony as to how the mental issues are contributing to the employee's ability to return to work or not return to work. This is all tied together in the end by the two vocational counselors who in this case, Mr. Jim Reagans and Mr. I believe I'm pronouncing it correctly, Grezek. Mr. Grezek was brought in under Section 12 by the employee. Mr. Reagans was hired by the employer to provide vocational counseling. The arbitrator and commissioners found both of these professionals to be credible in this case. But I believe that the manifesto of the evidence demonstrates Mr. Reagans' opinions are more credible in that foundation of what he based his opinions on that the employee was employable. And how are you tying in the manifesto of the evidence standard as to who's more credible? It's the foundation upon which their opinions are based. When they were looking, and I would draw your attention to the last paragraphs, it's A-1-2-1. I don't know if I'm signing it right. In the commission, the arbitrator's decision adopted by the commissioner, Your Honor, the last full paragraph where the arbitrator's discussing looking at the evidence that Mr. Reagans had, looking at the evidence that Mr. Grezek had and coming to their opinions, I believe that the record's clear that Mr. Reagans, the foundation for his opinions, were based on true evidence in the record and the full amount of objective criteria for determining employability versus Mr. Grezek, who was brought in. He makes determinations based on her mental health state, for which Dr. McGregor, or McGorkin, I believe I'm pronouncing it right, he didn't even comment on how her mental health issues would affect her employability. We have a vocational professional who's making these conclusory statements and basing his opinions on information that's just not in the record. Well, isn't it up to the commission to assess the foundations, as you put it, or lack thereof? Isn't that still part of the mix? That is correct, Your Honor, and admittedly, that is correct. I think that they missed the boat, and I believe that manifestly the evidence demonstrates that making that determination, that they were incorrect. In these cases, there's no contrary medical evidence. You didn't put on anybody any witnesses. There's no witness that contradicted the causation opinion on carpal tunnel. There's no witness that contradicted the opinion on anxiety and depression. Now, you did have a vocational rehabilitation expert that disagreed with theirs, but the fact of the matter is you didn't have any expert medical witnesses on these other two causation opinions. With respect to the mental health, you're correct. With respect to bilateral carpal tunnel, you're correct. Dr. Cantrell, with respect to the RSD, offered a contrary opinion. I believe that the burden is on the claimant to come forward, as would have been the testimony of Dr. McGorkin on the mental health aspect of this claim. We don't believe they carried their burden with respect to his testimony, and he never tested how the mental health aspects affected her employability. We can't leave that up to speculation. We can't leave that up to the conjecture of a vocational health specialist. The last point I want to make with all these tying together, it's obvious that the medications that the claimant was on played a significant role in her presentation. The employer submits that with the RSD being such a difficult condition to diagnose and treat with the competing opinions, to some degree, on the diagnosis of RSD. At the presentation when she attempted to return to employment, the fact that she's on different medications now, the fact that RSD is somewhat of a transient condition, three of the treating doctors in this case said RSD is not a permanent condition, with only one, Dr. Schmidt, testifying to the contrary. We believe that's against the manifest way of the evidence as it pertains to her. The arbitrator and the commission gave much more credence to RISD than they did to Reagan, didn't they? Well, they found much more. I would have to agree with that to the extent that they awarded permanent total disability in this case. Well, we're talking about those two counselors. They found, and to quote, both vocational experts are qualified and credible,  but then when the arbitrator goes on to explain why they find them more credible, it's the bases that are lacking. When she talks about the long-term use of narcotic medications, well, I wouldn't stand here before you and indicate that narcotic medications don't affect a person. We don't have medical professionals saying this narcotic medication prevents her from doing Job A, B, or C. Dr. Grezik makes that leap, or Mr. Grezik makes that leap, makes that conclusion, and we don't believe that's supported by the record. So do we give some credence to when the arbitrator and the commission say that they give more credibility to Grezik's opinions, which are more consistent with the findings of the medical records? They say that you do have to give weight to what the commission says. Obviously, it's our appeal, and it's a manifest way to be evidence. I believe that the findings with respect to the medical records, you do have to give credence there. It's the other ongoing mental problems, worsening chronic pain syndrome, narcotic medication, the attempt to return to work. In the brief we pointed out and discussed today, those other bases are wrong. There is obviously some support for Mr. Grezik's opinion in the medical records. I can dispute that. Thank you. Thank you, counsel. Counsel, please. May it please the court, counsel. The argument by the village of Bithy and the employers is solely based upon a manifest way to be evidence. And just to quickly run through the evidence, and I think a lot of it has been discussed already, the causal connection issue with regards to the RSD, Dr. Gertler, one of the testifying surgeons, he testified the work-related knee surgery caused the RSD. Another treater, Dr. Lee Sigler, testified that the RSD is consistent with what can be seen after knee surgery. Dr. Fletcher, which was the first IME doctor that was hired by the employer, he opined that the findings of RSD were consistent with her condition and it was work-related. Interestingly, he was never called to testify in this case. I submitted his opinion through his report into evidence. However, the employer did choose to hire another IME doctor, Dr. Cantrell, and his opinion was that there was no RSD at all and the best diagnosis was that of chronic pain syndrome, which sounds a lot like RSD or complex regional pain syndrome. In any event, the arbitrator found that the three doctors were more credible and gave more weight to that evidence in finding that the RSD was causally related. As far as the RSD being chronic in nature, Dr. Schmidt is an anesthesiologist who specializes in pain management. Kenny, the employee, referred to him for ongoing treatment of her chronic pain. He testified that her RSD was in a chronic state and would be a lifetime condition. He testified she would need to medicate for the rest of her life, barring any new developments. Were there any medical testimony against that? No. Village of Fithian did not offer any evidence as to whether Kenny's RSD had become chronic or permanent in nature, even though they did have two different IME doctors available in the case. The commission found that the chronic permanent RSD was work-related, and I don't see how it could be said that finding was against the manifest weight of the evidence. With regards to the carpal tunnel syndrome, I won't spend a lot of time there. Dr. Sebesky was the only doctor, again, who gave an opinion as to what caused the carpal tunnel and testified it was work-related. As far as the mental issues, Dr. McGrogan was a treating psychologist, and, again, he was the only doctor who testified as to her mental condition and the need for ongoing psychological care. He causally connects the RSD to the need for ongoing psychological care. He also found that her mental illnesses were causally related to her inability to return to work. There was no contradictory evidence offered by the village. As it relates to nature and extent, there were basically two different professionals who testified. Mr. Gryzik testified on behalf of Kenny, and Mr. Reagans testified on behalf of Village of Bithyen. Interestingly, both experts testified live in front of the arbitrator, and certainly the arbitrator and the commission found that Mr. Gryzik's opinions were more consistent with the record and the medical evidence. Mr. Gryzik testified that all the different issues he relied upon in determining whether she was a candidate for vocational placement were appropriate under certified vocational counselor guidelines. Although Mr. Reagans was there, he was not called to rebut that testimony or offer evidence otherwise. And so, again, I would argue that the decision of the commission could not be found to be against the manifest way of the evidence, as the arbitrator stated. Both counselors were qualified and gave credible testimony, but Mr. Gryzik's was more consistent with the evidence of the record. And then, finally, the medical expenses. It's argued by Village of Bithyen that the medical bills should not have been awarded. I would say that based upon the arguments already made, that the medical treatment and need for treatment and expenses was causally related, and it therefore flows that the awarding of the medical expenses was appropriate and not against the manifest way. That's all I have. Thank you, Counselor Rowe. Of course, we'll take the matter under advisory for disposition.